Good morning, and welcome to the Ninth Circuit. We're pleased to see people in person and happy to have you here. Before we get started, on behalf of myself and Judge Hawkins, I want to thank Judge Ostani for joining us today and volunteering to assist us with our cases. We have a number of cases on the docket this morning. Most of them have been submitted on the briefs. Just for the record, I'll recite those. First, Medina Herrera v. Garland. Lopez Salinas v. Garland. Corrales Jimenez v. Garland. Perez Gonzalez v. Garland have all been submitted, as well as Stanley v. Kijikazi. So we have two cases for argument this morning. Our first case is Lietz v. Wilpher. I think we have counsel both present and we are ready to start. And so, I'm probably not going to say your name quite right. Mr. Acharya? Excellent. Come on up. Can your honors hear me? Great. Good morning, your honors, and may it please the court. My name is Atul Acharya and I represent the plaintiff and appellant, in this case, Paul Lietz. I'd like to reserve two minutes for rebuttal. Thank you. The court asked specifically for argument on jurisdiction, so I'll start there. But I should preface this by saying this is a different argument that's in the briefs. I did more research after the court's order, so I'd be more than happy to provide supplemental briefing afterwards. Can we get a little more volume? Is there a way to turn it up a little bit? I was just saying I'd be more than happy to provide supplemental briefing committing this argument to writing afterwards. But the short version is that Section 511 does not strip the federal courts of jurisdiction over Mr. Lietz's claim. Section 511's jurisdiction stripping provision is exactly coextensive with a grant of jurisdiction elsewhere in Title 38 to the Board of Veterans Appeals, a body within the Veterans Administration. What that means is that if a claim can be heard in the Board of Veterans Appeals, then Section 511 prevents the federal courts from hearing it. But if a claim can't be heard in the Board, then Section 511 is silent as to whether federal courts can hear it. Your client receives medical treatment at this facility, correct? That's correct, Your Honor. And he has in the past? Yes, Your Honor. And when he goes to the facility, it's for the provision of benefits, correct? Yes, Your Honor. So it's the order, not one that affects the provision of benefits. That's the standard, isn't it? That is the standard in the text of Section 511, Your Honor. But Section 511 has to be read in concert with another provision in Title 38, Section 7104. 7104 says, it talks about the jurisdiction of the Board of Veterans Appeals. And what it says is that the Board makes final decisions on questions that, under Section 511, are subject to decision by the Secretary. So it calls out Section 511 by name and says, the universe of questions that Section 511 withdraws from the district federal courts is lodged in the Board of Veterans Appeals. So if a claim can be heard in the Board, then it can't be heard by the federal courts under Section 511. But if a claim can't be heard by the Board, then the federal courts can hear it. So the only question is, could Mr. Leitz's claim have been heard by the Board? And the answer to that? Can we just go back a little bit? I'm really having a hard time understanding you. You're going pretty fast, and maybe I'm pretty slow. Are you saying that the order that controlled his behavior is something that can't be appealed to the Board of Veterans Appeals? Yes, Your Honor. Okay. That's what you're telling me now. Exactly. And therefore, jurisdiction remains in the district courts. Exactly. Okay. Got it. And the reason we know that his claim could not have been heard in the Board of Veterans Appeals is both under the relevant statutes and regulations and in the record itself. As I was saying, the Board is where the Secretary makes final decisions. But final decisions in OBR cases are made by the Network Director. That's in 38 CFR 17.107 Part E. It says that's the final port of call. And that's also apparent in the record at District Court Docket Items 23-2 at page 26 and 23-3 at page 4. And again, these aren't in the record. I'm happy to supplement afterwards. But those are the letters that the medical center sent to Mr. Leitz informing him of the OBRs, informing him of the one-step appeals process. Let's assume that we accept your argument that this does not go the way of veterans' benefits. What's your best case that says it's a clear constitutional violation to issue an order of this type, given your client's past behavior? Your Honor, I don't think there's anything in the record about his past behavior other than the fact that the defendants found his speech vulgar and hostile. There's no — Mr. Leitz alleges, and the government has never contradicted, that he's never been threatening, he's never been physically threatening, he's never had to have the VA police intercede while he's there in person. Okay, let's assume for the purpose of argument that he was a model patient at the VA center. What's your best constitutional case that says it's a clear violation of the U.S. Constitution to issue an order of this type? I think that would be Brodheim v. Cry, Your Honor. And that was a case — it was in the involved a grievance to the agency that was rude, hostile. It was not pleasantly worded, probably somewhat similar to Mr. Leitz's grievances. And what the Court said is that even when speech is of that sort, it's still protected. And the Court said that in Brodheim v. Cry. And then, of course, there's the Cohen v. California case, which also says that vulgar and volatile speech is still protected speech. You can state your grievance to the government in terms that are not pleasantly worded, and that's still protected. The question is whether he — you know, if he went further and created a threat, that's a different question, but that's not here on the record. And since this is a 12 v. 6, he's entitled to the benefit of inferences from his complaint. I hope that the panel agrees with that. What's your best argument for us to extend Bivens, which we would have to do to cover the claim your client makes? Yes, Your Honor. You agree with that, don't you? Absolutely, Your Honor. I think after this Court's decision in Hoffman v. Preston, I can't say that this isn't a new context. So for extending Bivens, the best cases are those that are not in the history of the United States. The case of Richard H. Rose in a similar situation where there was a comprehensive congressional scheme, but the — there was no evidence that Congress had anticipated the specific type of injury present there, which was that an ICE agent falsified evidence to have this man deported from the country. And the Court held that even though he was able to reopen immigration proceedings and obtain cancellation of removal, he had no remedy within the INA for the completed constitutional harm that he'd suffered from being kicked out of the country for a number of years. And the same is true here. Mr. Leitz has at most — the only remedy that the government has set forward is a 17.107 appeals process, and I'll get back to why that's insufficient in a second. But even taking that as it is, it only offers prospective relief and it doesn't offer relief for the completed harm of having to undergo medical procedures and tests while the VA police are watching. The OBR process also, the appeals process, 17.107, is insufficient for another reason. The Supreme Court has never held that a remedy like that, created wholly by the executive branch that terminates within the executive branch with no potential for judicial review, can displace a bivence claim. And that's important to note. Congress had no say in this OBR scheme. It doesn't appear in the statutes. It's wholly a creation of the executive branch. And so when the executive branch purports to cut off judicial review of its own actions without any express authority from Congress, what the Supreme Court has held, quote, time and again, is that judicial review of executive action will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress. And that's the case called Martinez v. Lemano, 515 U.S. 415. And the focus is on Congress's intent, and the same is true in bivence. The focus is on whether Congress intended to displace — The case you just mentioned in your brief — It's not, Your Honor. This is part of the jurisdictional research that I did after the order. But — but LaNuza is in the brief, and so are the Supreme Court cases, none of which have held that a remedy wholly created by the executive branch can displace bivence. Where the Supreme Court has held that an administrative remedy can displace bivence, it's been one created by Congress, such as in Bush v. Lucas and Schweiker v. Jalicki. In addition, as the Court just held in Hoffman a couple of months ago, an injunction or other prospective relief is inadequate to cure the harm that a plaintiff has suffered. Sorry, is this 2 minutes to 8 minutes or 2 minutes to 10? Great. Well, in that case, I will reserve the rest for rebuttal. Thank you. Good morning, Your Honors. Peter Wasedich. May it please the Court, my name is Peter Wasedich, and I'm here today. I'm an assistant U.S. attorney, but I'm representing two health care individuals who have been sued in their personal capacities here, Dr. Andrew Wilfer and Carrie Barbero. Given the Court's inquiry about that jurisdictional issue, I would like to address that first. I do believe — I appreciate the Court pointing out that issue, and I do believe that is a strong defense in this case, and I think there is a jurisdictional issue. The decision to issue the Order of Behavioral Restriction clearly impacts Mr. Leitz's benefits and the manner in which they're delivered. That's the entire point of it. When he shows up at the VA, he doesn't get to — he's not just a normal patient showing up. He has to go check in with the police. The police then escort him around. And essentially, the purpose for this is that he essentially has a chaperone because he had engaged in multiple — on multiple different occasions, he had engaged in aggressive behavior. The government's position is that this is not — that this is a decision. The OBR is a decision affecting the provision of benefits. Yes, the time, place, and manner. Authority. Can you give the panel an example of an OBR or anything like it that would not affect the provision of benefits? I think every OBR is going to affect the provision of benefits. Can you speak up a little bit? Yes, I believe that any OBR would affect the provision of benefits. That's the — the purpose of it is to restrict the time, place, and manner in which services are provided. And the Code of Federal Relations defines benefits to include services, so — But once a veteran enters the facility — this is Boise, right? Yes, it's the Boise VA. Once a veteran enters that facility, anything that the facility does — dress code, not wearing political signs or buttons, anything — is a restriction that affects the provision of benefits. There's no exception, in your view. No, I believe there would be exceptions. Give an example. Give us an example. Political speech, for example, if somebody comes in wearing, you know, some sort of political slogan on their shirt or something along those lines, that's one thing. Here, that's not what was happening, though. It was the manner in which he was engaging with people. And I think — I've cited in my brief, this was a committee decision. They contacted the police chief. They contacted — it was, you know, a group of people. There's — in the record, it talks about email chains being exchanged between nine different individuals, them talking to the police chief. This was a fear for safety. This was not a fear for — this was not political slogans, things of that nature. So I wouldn't take that — I wouldn't go to that level. I would say that the purpose of the OBRs are to ensure that benefits are provided — that benefits are not interrupted at the facility. So it's — Well, if a veteran shows up at the Boise facility, walks up to the front and said, I'm a veteran, here's my DD-514 or whatever, and I need an appointment with a neurologist, and the person behind the desk says, do you have an appointment? And he says no. Well, then you have to leave. Here's our email address. Here's our website, our URL. You have to make an appointment. Would that be a decision affecting the provision of benefits? No, I think that would just be a decision affecting the — that's not an OBR. That's not an order of behavioral restriction. That's just trying to ensure the continuity of benefits provided to veterans at the facility. I think that's just running a business in a normal manner. It's not what an OBR is meant to do. An OBR is like a specific regulation that says you can restrict the time, place, and manner in which benefits or services are provided if a decision is made to — if a decision is made to issue that OBR. And then the regulation includes that you can appeal that decision to the district, to the network director. Let's talk about that point. Sure. Because your adversary suggests that if we don't exercise jurisdiction over this issue, then there is no — there's no further review. Is that right? I don't believe that's right. They could — I mean, they could pursue an — they could bring a claim under 511. They could pursue that avenue. I think that there's probably two avenues that someone could take here. You can make that appeal through the administrative process, or you can bring your — I didn't find where you go after the network director. That regulation — Where does it tell me in the scheme of things where to go after the network director? The regulation does not address that. The regulation says you can go to the network director. I think that the route that you could go jurisdictionally is through the Veterans Judicial Review Act route. I think that's the 511 route is the way you would go. I think that's — 511, 512, I think that's the route you could go. 511 says network director decisions can be appealed to the board? No. It's the regulation. Okay, so how do I get from — just tell me the steps that would get me from network director to the board, which then could get me to the Veterans Appeals Court. So just tell me how does a person know what to do, and what are those steps? So what I — the way that I read this is that you can appeal it under the regulation first, the network director, and then if you wanted to go a different route after that, if that did not satisfy you, then under the veteran — under the VJRA, you could then sue — you could bring suit in the U.S. — in the Court for Veterans Claims, and you could pursue that route if you wanted to. I thought you only get to the Court of Veterans Claims if you have a decision of the Board of Veterans Appeals. Yes. I need to know how you get from network director to the Court of Veterans Appeals. I think you can go through the Article I courts to get to the Court of Veterans Appeals. But I think — so I think there's two routes to it. I think you can go through the regulation first, and if you're not satisfied with that, you can file suit in an Article I court and pursue that route if you need to. So maybe the confusion is how do you bring a 511 claim? Because as I read the statute, 511 says that the secretary decides any questions affecting the provision of benefits. And then the statute that governs the jurisdiction of the Board of Veterans Appeals says that any 511 decision can be reviewed by the board. So how do you bring a 511 claim? That's not through this network director path, right? It's through the Article I courts. So you would — he would have to file some sort of action and specifically reference 511, I assume? Yes. That's how I read it. And so after you've gotten a decision by the network director, you can still do that, or have you missed your opportunity? I believe so. I have not seen anything that says that you're foreclosed from going that route if you wanted to. We've got no examples of this happening, right? People appeal these OBRs to the network director. It says final, and that is usually the end of it. I mean, nobody's cited anything here that says it goes any further. I'm just telling you what my read on it is. I agree. There's very little guidance out there that would show which route you would go. That's the route I believe you could go if you wanted to. Of course, if we as a court said that these challenges to OBRs, at least in circumstances that somehow impact the provision of medical services, is a decision affecting benefits, then that would trigger 511 and that whole path, and people would understand that path, presumably. Yes, Your Honor. So what happens? They go through the board, they go to the court, the Article I court, and then appeal to the federal circuit, is that right? Yes. That would be the next step? That's the path I believe you could follow. I have not seen anything saying that you cannot follow that path. Okay. But let's assume that this individual, the veteran here, does that, and the federal circuit says this is not a claim affecting the provision of benefits. What does he do then? Then his sole avenue of review, the avenue he would have been entitled to take advantage of would be going to the network director. I have not seen that being foreclosed. I think that's... Sounds a little bit like a reverse Hotel California. Are you familiar with that? No. You can check out any time you want, but you can never leave. And this would be you can check in any time you want, but you can never succeed. Well, let's see. Then he would go to the district court. He would sue because it's not benefits, right? And then the district court would have to say, then he could appeal that to the Ninth Circuit. The Ninth Circuit and the federal circuit could disagree about whether it's benefits or not. Yes, that could happen. Okay. All right. I can see that happening. I have a record. I mean, we have a limited record because we're on a motion to dismiss. But based on the allegations in the complaint, it seems clear that the OBR didn't affect his ability to have medical appointments because his complaint lists many, many, many medical appointments. Yes, he always is able to get medical appointments. Just the time and manner in which he gets them has been changed. I guess that's the question. I mean, the government's position has to be this is a benefits decision. And yet we have, based on his own allegations, he's getting benefits. So how is it a benefits decision? Because it affects the time and manner in which he gets them. He's not like every other person who goes to the VA. He has to go check in with police. That has to be something that he has to set up in order to get his benefits. So it does affect benefits in that manner. So what he's saying here, he's not saying anything about deprivation of benefits. He's not complaining that, as far as I understand, he's not alleging that because this person was around, he wasn't getting his treatment or he wasn't able to talk to his doctor. So your position has to be that the particular facts don't matter. Anytime you get an OBR, it's a decision affecting benefits. It does affect the manner in which his benefits are provided. Okay, but basically, as a matter of law, you're saying, because he's not alleging any particular factual effect on his benefits. So you have to be arguing that as a matter of law, any OBR is a decision affecting benefits. It affects the manner in which benefits are provided, yes. All right. And with that, I have a minute left, so I'd just like to just note that this ‑‑ Actually, you're a minute over. I'm a minute over? You are. All right. Thank you for your argument. All right. Thank you. The sound system and I are not agreeing, so will you speak slowly? Yes, Your Honor. Thank you. I will do my best. And there's a button right below your tie bar in front there that you can raise the podium up So those microphones are ‑‑ Put the mics right in. Let me know. Is that good? That's probably good. Thank you, Your Honor. Just three points on rebuttal. First, there's, as I think Your Honor pointed out, there is, in fact, nowhere to go after the network director. And that is the agency's view. The agency told Mr. Leitz the appeals process to the network director, and then it told him, and I'm quoting, no additional appeals of these restrictions will be accepted. Is that just administrative appeals? Why couldn't they go to the district court? There's no ‑‑ I mean, he did go to the district court. I think that's this suit. There's no provision to go to the district court. There's no Article I court that you can go to that my friend claimed there is. There's the Court of Appeals for Veterans Claims. Its jurisdiction is appeals from the Board of Veterans' Appeals. That section ‑‑ Well, that regulation could be telling us that the network director's decision is final, meaning you have a final administrative decision, and now you can seek judicial review. So if we say it's not a benefits decision and you can go through that route, why can't at that moment you go to federal court with your final agency decision? For an APA claim, Your Honor? Correct. Well, if you ‑‑ possibly you could. My friend has never said that. But that wouldn't ‑‑ that doesn't make it a question under Section 511 because questions under Section 511 go to the Board of Veterans' Appeals. That's 7104. If the agency themselves said that this is not a question that can go to the Board of Veterans' Appeals, then it's not a question under 511. And like I said, I'd be more than happy to provide supplemental briefing on this issue. There's no such thing as a 511 claim. 511 is a jurisdiction stripping provision, and it provides jurisdiction to the Board of Veterans' Appeals. But that's all it does. It doesn't create a claim or a right of action. That's Bivens or nothing for my client as it was for Mr. Bivens himself. I want to ask you about is this or isn't this a benefits-related issue. Looking back at the complaint, it does seem like he is referencing specific impacts to his ability to get benefits. He's not able to go to certain facilities. He has to have a law enforcement officer present in his appointments, meaning an implication of his privacy rights in the context of medical care. Those seem to clearly impact the way that benefits and medical services are being provided to him. So how is it not a benefits decision? Yes, Your Honor, I agree that he did have some impacts to his benefits.  I think that's correct. But the better argument is just the plain structure of Title 38 is that claims go one of two routes. They either go up through 7104 to the Board of Veterans' Appeals, to the Court of Appeals for Veterans' Claims, to the Federal Circuit, or 511 doesn't prevent them from going to the district courts. And so because this doesn't go to the board under the agency's own view, then it has to be one that can go to the district courts under Section 511. I see that my time is up for these reasons. Questions? I'm wondering, I think he said cases, but I don't know. Should we get them to just give us a list of cases they cited today that we've not included? We can do a supplemental letter after. Yeah. We may ask you to do a supplemental letter and reference the case law that you have spoken about that is not in your briefs. Absolutely, Your Honor. But for these reasons, the Court should reverse that district court's decision. Thank you. Thank you both for your able arguments, and particularly I want to say thank you to Mr. Acharya. He was representing his client today pro bono at the request of this Court, and we appreciate the able representation that you have given to your client and the benefit to the Court. Thank you. Your Honor, if there is any supplemental brief, then I would ask it. We will give you direction after argument. Thank you.
judges: HAWKINS, FORREST, Restani